IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, : | |
| : | Case No. 1:22-cr-89 |
| Plaintiff, : | |
| : | Judge Susan J. Dlott |
| v. : | |
| : | Order Denying Motion to Dismiss |
| Darrin Johnson, : | |
| : | |
| Defendant. : | |

This matter is before the Court on Defendant Darrin Johnson's Motion to Dismiss Based on Violations of the Sixth Amendment Right to a Speedy Trial and the Due Process Clause (Doc. 24). The Government opposes Johnson's Motion (Doc. 26). Although the Court will **DENY** Johnson's Motion, it does not do so lightly.

I.  **Background**

  A.  **Facts Alleged in the Indictment**

On November 2, 2022, Darrin Johnson was charged in this Court with a Hate Crime in violation of 18 U.S.C. § 249(a)(1). (Doc. 6.) The facts alleged are straightforward. On August 17, 2021, Victim 1, an Asian American, was standing on a sidewalk located in Cincinnati, Ohio. (*Id*. at PageID 17.) Johnson approached Victim 1 and yelled a slur about his Asian ethnicity, including blaming Victim 1 for COVID. (*Id*.) Johnson then assaulted Victim 1 by punching him in the face, which caused Victim 1 to fall and hit his head on a parked car. (*Id*.) Johnson continued to attack the bleeding victim until bystanders intervened. (*Id*.) Victim 1 sustained an orbital contusion, facial lacerations, and acute head injury. The Government alleges that Johnson's assault of Victim 1 because Victim 1 is Asian is a Hate Crime in violation of 18 U.S.C. § 249(a)(1).

**B. Procedural History**

On November 3, 2022, Johnson made his initial appearance and was arraigned. (Doc. 10.) Johnson was temporarily detained, and a detention hearing was held on November 8, 2022. (Doc. 17.) At that hearing, the Magistrate Judge released Johnson on an Own Recognizance Bond with pretrial supervision and special conditions of release, which included abstention from alcohol and drug use and undergoing medical or psychiatric treatment at an inpatient facility in conjunction with substance abuse treatment when a bed became available. (Docs. 17, 18.)

The Government moved for reconsideration of that decision. (Doc. 19.) The Court held a hearing on November 17, 2022 and ordered Johnson to be detained pending trial. (Nov. 17, 2022 Minute Entry; Doc. 21.) The Court also ordered that Johnson be designated to a Bureau of Prisons ("BOP") medical facility to undergo a mental health and competency evaluation. (*Id.*) The Court ordered, pursuant to 18 U.S.C. § 4241(a), that a psychological examination of Johnson be conducted and a report created at an appropriate forensic study site designed by the Attorney General, to determine whether Johnson is competent to assist in his defense. The Court ordered the United States Marshal to request Johnson be designated to an appropriate forensic study site maintained by the BOP for a period not to exceed forty-five days from the date of arrival for a psychological evaluation and report to determine whether Johnson "may be suffering from a mental disease or defect rending him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *See* 18 U.S.C. § 4247(b). The time period necessary to designate Johnson to a

suitable facility and evaluate him was excluded from computation under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(A).[1]  (Doc. 21.)

On November 30, 2022, the Court was advised by the United States Marshal that Johnson's psychological examination would occur at MDC Los Angeles and ordered Johnson committed to the custody of the BOP to be transported to the facility.  (Doc. 22.)  Approximately ten months later, the Marshal alerted the parties on October 6, 2023 that the study order was complete, and Johnson was being transported back to the district.  (Doc. 26 at PageID 89.)

The docket of this case was silent until November 16, 2023, when Johnson filed his Motion to Dismiss.  (Doc. 24.)  At the time, the Court and parties were still awaiting a psychological report.  On December 4, 2023, the Court received a Sealed Forensic Evaluation, which constituted the mental health and competency evaluation ordered pursuant to 18 U.S.C. § 4241(a).  (Doc. 25.)  The Government responded in opposition to the Motion to Dismiss the same day.  (Doc. 26.)   A Sealed Corrected Forensic Evaluation Report was filed on December 6, 2023.  (Doc. 27.)

On December 7, 2023, the Court held a Competency Hearing and Hearing on the Motion to Dismiss.  The Court accepted the Sealed Corrected Forensic Evaluation Report and took the Motion to Dismiss under advisement.[2]  (Dec. 7, 2023 Minute Entry.)

For the reasons that follow, the Motion to Dismiss will be **DENIED**.

---

[1] Although neither party objected at the time, Johnson's attorney asserted at the Motion to Dismiss Hearing that he objected to the whole process by virtue of opposing Johnson having his bond revoked. (Transcript, Doc. 28 at PageID 138.)

[2] The Hearing transcript, which the Court ordered to be prepared, was filed on December 20, 2023, tolling the Speedy Trial clock to that point.  *US v. Polan*, 970 F.2d 1280, 1284 (3d Cir. 1992) (time court waits for completion of a pretrial transcript of a pretrial motion hearing is properly excluded under the Speedy Trial Act).

**II.     Motion to Dismiss**

Johnson moves to dismiss this action on Sixth Amendment grounds because he was held for over a year for the purpose of obtaining a competency evaluation and report. Alternately, he argues that the case should be dismissed for violation of his Fifth Amendment due process rights. The Court will consider each argument in turn.

**A.  Sixth Amendment**

Pursuant to the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In *Barker v. Wingo*, the Supreme Court established a four-factor test to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972). "No one factor is dispositive." *United States v. Sutton*, 862 F.3d 547, 559 (6th Cir. 2017). The factors must be considered together along with any relevant circumstances. *Id*. The remedy for a Sixth Amendment speedy trial violation is dismissal with prejudice. *Id*. at 554.

**1.  Length of Delay**

The first *Barker* factor is clearly met. The Court ordered a competency evaluation and report to be prepared on November 17, 2022. (November 17, 2022 Minute Entry; Doc. 21.) The Court did not receive the Sealed Forensic Evaluation until December 4, 2023, and a Corrected Sealed Forensic Evaluation until two days after that, on December 6, 2023. (Doc. 25, 27.) There is no dispute that where the length of the delay is over one year, as is the case here, prejudice is presumed. *Sutton,* 862 F.3d at 559. That this factor is met triggers analysis of the remaining *Barker* factors. *Id*.

**2. Reason for Delay**

"In assessing the second factor, the reason for the delay, the Court considers who is most at fault—the government or the defendant." *Id*. (citing *Brown v. Romanowski,* 845 F.3d 703, 714 (6th Cir. 2017)). As set forth in *United States v. Allen*, the Supreme Court catalogues reasons for delay into three buckets:

> In bucket one, this reason-for-delay factor weighs strongly against the government if the government engineers a delay in bad faith "to hamper the defense" or obtain a tactical advantage. In bucket two, this factor still weighs against the government (but less so) if it causes the delay for an invalid reason but without any bad intent. Examples of this second type of delay include the executive branch's "negligence" in tracking down a defendant or the judicial branch's "overcrowded" dockets. In bucket three, this factor weighs in favor of the government if it identifies a legitimate reason for the delay or if the defendant causes it. Examples of this third type of delay include the federal government's decision to wait for the state government to prosecute the defendant for the same conduct, defense counsel's decision to litigate pretrial motions or ask for continuances, or the defendant's decision to seek new counsel.

86 F.4th 295, 304–305 (6th Cir. 2023) (internal citations removed). The Government bears the burden of explaining the cause of the delay. *Sutton,* 862 F.3d at 559.

The parties dispute the reason for delay. Johnson argues that the delay is the result of the Government "intentionally not following the law" with no recourse, which constitutes bad faith. (Transcript, Doc. 28 at PageID 128.) Specifically, the Government did not seek any extensions of time to procure a psychological examination and report as required by statute. In support, Johnson directs the Court to examine the statutory obligations borne by the Government when it gains custody of the defendant for the purpose of conducting a psychological examination. Pursuant to 18 U.S.C. § 4247(b), a psychiatric or psychological examination under this section permits commitment of a defendant into the custody of the Attorney General for placement in a

5

suitable facility for thirty to forty-five days.[3]  *Id*.  The director may apply for an extension of time, not to exceed fifteen days, upon a showing of good cause that additional time is necessary to observe and evaluate the defendant.  *Id*.  Delay from transporting the defendant up to 10 days at a time is excludable from the speedy trial calculation.  18 U.S.C. § 3161(h)(1)(F).  In this case, the amount of time that elapsed would have necessitated many requests for extensions of time, yet not one was sought.

In addition, the examination must be conducted at a "suitable facility closest to the court" unless doing so is "impracticable."  18 U.S.C. § 4247(b).  Johnson contends the Attorney General also disregarded this obligation.  Johnson argues that the Government selected quite possibly the farthest location to which he could be designated.  As there was only one doctor who had been functioning for a six-month period at MDC Los Angeles, the doctor could not possibly have completed her statutory obligations to produce a report within the designated

---

[3] 18 U.S.C. § 4247(b) is set forth below:

> **(b) Psychiatric or psychological examination.**--A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner.  Each examiner shall be designated by the court, except that if the examination is ordered under section 4245, 4246, or 4248, upon the request of the defendant an additional examiner may be selected by the defendant.  For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, 4243, 4246, or 4248, for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility.  Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court.  The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245, and not to exceed thirty days under section 4242, 4243, 4246, or 4248, upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

timeframe. (Doc. 28 at PageID 127.) Defendant's attorney acknowledged that perhaps this particular doctor was overburdened, but the Attorney General did nothing to comply with the law, which is a "complete indifference to the rights of defendants." (*Id*. at PageID 127–128.) This, he argues, amounts to bad faith.

The Government asserts that the delay is due to Johnson not being fully cooperative in his evaluation process as well as the doctor's caseload. In support, the Government attached an explanatory e-mail from Dr. Tiffany K. Smith, the doctor who prepared Johnson's forensic evaluation. Dr. Smith explained:

> While Mr. Johnson was polite, pleasant, and generally cooperative with the gathering of background data, there were inconsistencies in his reported mental health symptoms and he responded to test items in a manner that required additional test administration for further clarification. Particularly of note, Mr. Johnson did not initially participate in legally focused interviews in a forthcoming manner. His response to items in the standard interview were questionable, so an attempt was made to utilize a forced-choice measure. However, Mr. Johnson made unrealistic claims (i.e., "I don't know what a doctor is" after having provided an extensive history regarding seeing a doctor to get medication). Therefore, an additional measure was administered, which measures the defendant's effort and approach to legally focused questions, and the session was discontinued for that day. Mr. Johnson's score suggested he was attempting to appear more impaired than his true level of functioning. Given his lack of cooperation, a true understanding of his legal knowledge and ability was not able to be obtained at that time. I planned to return at a later date to re-attempt the initial standard legal interview. My focus returned to my 15 other cases, including at least two out of district in-person court appearances (Sacramento twice). I met with Mr. Johnson for his final interview on October 5th, during which he was much more forthcoming and cooperative. Since then, I have been writing reports for cases that arrived prior to Mr. Johnson, had an in-person court appearance in Bismarck, and am finalizing Mr. Johnson[']s report now.

(Doc. 26-1 at PageID 96.) The Government argues the delay that occurred from the doctor's backlog was "an invalid reason but without any bad intent" and the delay caused by Johnson's lack of cooperation was the result of his conduct. The Government argues the delay caused by

7

the doctor was not engineered in bad faith to hamper the defense or obtain a tactical advantage. *Allen*, 86 F.4th at 304–305.

On balance, the Court finds that the reason for the delay falls in the second bucket described by *Allen:* an invalid reason but without bad intent. The delay was primarily caused by systemic backlog due to placing Johnson at a facility with an overburdened doctor. Johnson's lack of cooperation likely contributed to some small degree; however, it is not apparent that his behavior caused a significant delay as the doctor herself admits that the evaluation was discontinued for the day, but ultimately put on the backburner due to other obligations until she had time to meet with Johnson again. The Court does not find that the selection of MDC Los Angeles or the fact that the facility had an overburdened doctor rises to the level of bad faith in that these things were done to hamper the defense or obtain a tactical advantage. This factor thus favors Johnson, but not as strongly as if bad faith was present.

### 3. Defendant's Assertion of his Right

"The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–532. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 531. A belated assertion of one's speedy trial rights "cast[s] doubt on the sincerity of the demand" and weighs in favor of the government. *United States v. Flowers*, 476 F. App'x 55, 63 (6th Cir. 2012) (speedy trial rights asserted at least twelve months, and arguably seventeen months, after the defendant was indicted) (citing *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999)). *See also Sutton*, 862 F.3d at 561 (assertion of rights factor was neutral, where defendant did not assert speedy trial right until after his conviction and sentence were vacated on collateral attack).

8

Johnson failed to assert his right until his Motion to Dismiss was filed, and as such, this factor weighs against him. Countering this, Johnson argues that he asserted his right as soon as he was back in the jurisdiction, which was after about a year had passed since the Court ordered a competency evaluation. (Doc. 28 at PageID 131.) Johnson's attorney argues that it would be unfair to fault him for not filing a motion until he was aware of whether his client was competent to make decisions. (*Id*.)

On the other hand, Johnson's attorney could have asserted his client's right as soon as the statutory time period to obtain a psychological examination ran and no report was filed.[4] Were he to have filed a motion at that point, some of the concerns in this case could have been alleviated. For instance, a bad faith finding may have been warranted had the Attorney General knowingly continued to not improve the situation in spite of Johnson's motion and/or complaints. Had Johnson asserted his right sooner, the Court could have ordered the Attorney General to file its psychological examination report within a prescribed time period and given notice that failure to comply may warrant a bad faith finding and/or dismissal of the case.

On balance, the failure to assert his right weighs against Johnson.

### 4. Prejudice to Defendant

The final factor "requires the defendant to show that substantial prejudice has resulted from the delay." *United States v. Zabawa*, 719 F.3d 555, 563 (6th Cir. 2013) (quoting *United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006)). This factor should be assessed in light of three interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and

---

[4] The Court, however, is aware of and troubled by the systemic issues of delay here and certainly does not fault Defendant for the problem he experienced. The Court itself reached out to Dr. Smith without any success at obtaining the psychological examination in a timely fashion. (Doc. 28 at PageID 123.) That said, advocacy works best when the defendant's attorney serves as that advocate, rather than the Court or another party filling that role. The Court cannot assume Johnson's more timely assertion of his right would have been futile.

concern due to unresolved criminal charges; and (3) to minimize damage to the defense. *Sutton*, 862 F.3d at 561–562 (citing *Barker*, 407 U.S. at 532).

Johnson concedes that the third interest is the most important yet is not met in this case. (Doc. 28 at PageID 131.) Here, as in *Sutton*, Johnson pled guilty to underlying state charges. *See* 862 F.3d at 562. The court found no trial prejudice as the evidence was established by the defendant's state case, which is the same here. *Id.*

Turning to the remaining interests, the first interest is prevention of oppressive pretrial incarceration and requires a stronger showing where trial prejudice is lacking, as in this case. "In the absence of particularized trial prejudice, delay attributable to the government's negligence has typically been shockingly long to warrant a finding of prejudice." *Robinson*, 455 at 608 (internal quotation marks removed); *Doggett v. United States*, 505 U.S.647, 657 (1992) (six year delay)). In *Robinson*, a delay of thirteen and a half months was found to be a "shorter" delay attributable to governmental negligence and did not give rise to a presumption of prejudice. 331 F.3d at 559. Because the Court has not found bad faith here, it does not find the length of the delay in this case rises to a "shockingly long" delay.

The second interest, minimizing anxiety and concern due to unresolved criminal charges, weighs slightly in Johnson's favor. In *Sutton*, the Sixth Circuit found "minimal" anxiety existed where a defendant pled to state charges, as was the case here, and would have otherwise pled guilty to federal charges. 862 F.3d at 562. Despite a similar procedural posture, Johnson argues he has experienced significant anxiety due to the delay due to traumatic incidents that occurred while held at MDC Los Angeles. In addition to the anxiety of being held for months without explanation for the delay, he also severed part of his finger, requiring it to be stitched back on, and his mother tragically passed away unexpectedly. (Doc. 28 at PageID 134–135.) Johnson

argues, and the Court agrees, that he endured "beyond the norm problems" at a facility when he should not have still been held there. (*Id*. at PageID 135.) The Government takes the position that Johnson's problems are personal and should not be considered.

The Court finds it appropriate to give some weight to the traumatic events Johnson endured while being held at MDC Los Angeles. On the other hand, the fact that Johnson has already admitted the underlying conduct of this case in state court mitigates some of the anxiety about his case being unresolved.

In sum, the third and first prejudice interests favor the Government, whereas the second prejudice interest slightly favors Johnson. On balance, the prejudice prong favors the Government.

### 5. Conclusion

In consideration of all four *Barker* factors, the length of the delay favors Johnson; the reason for the delay slightly favors Johnson; Johnson's failure to assert his right favors the Government; and lack of prejudice favors the Government. On balance, the factors favor the Government, and the Court finds no Sixth Amendment violation occurred. The extraordinary remedy of dismissal is not warranted.

### B. Fifth Amendment

The Court next considers whether the delay violated Johnson's Fifth Amendment right to due process. Because a person lawfully committed to pretrial detention has not been adjudged guilty of any crime, pretrial detention violates the Fifth Amendment when it amounts to "punishment of the detainee." *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Sixth Circuit considers the following factors if the pretrial detention is unconstitutionally excessive: (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial;

(3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based. *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) (citing *United States v. El–Hage,* 213 F.3d 74, 79 (2d Cir.2000)).

The Court has already weighed the length of detention, which favors Johnson, and extent of the Government's responsibility for the delay, which favors Johnson slightly, *supra*. Factors three and four, the gravity of the charge and strength of the evidence, both favor the Government as Johnson is charged with a Hate Crime and the evidence is strong, including Johnson's guilty plea to state misdemeanor charges associated with the underlying conduct. The Court considered the bases for detention at the detention hearing and concluded that detention was appropriate.

Both parties rely on *United States v. Donnelly* to support their respective positions. 41 F.4th 1102, 1103–1104 (9th Cir. 2022). There, the defendant was committed to the custody of the Attorney General for a competency evaluation, but due to a backlog, was awaiting a hospital bed for four months after the order. *Id*. at 1104. The Attorney General advised that the defendant would likely have to wait another four months until a bed would become available. *Id*. The defendant moved to dismiss arguing that his statutory and due process rights were violated, but the district court denied the motion. *Id*. The Ninth Circuit Court of Appeals found that 18 U.S.C. § 4241(d) was violated, but dismissal was not the appropriate remedy. *Id.* at 1106–1107. The Court reasoned that "Congress did not prescribe dismissal of the indictment as a remedy for violation of the time limits imposed by § 4241(d), as it has, for example, in the context of violations of time limits imposed by the Speedy Trial Act." *Id*. at 1106. The Court vacated the district court's decision and remanded with instructions to order the Attorney General to hospitalize the defendant at a suitable facility within seven days. *Id*. at 1107. In *dicta*, the Court noted that nothing foreclosed the possibility that dismissal may become appropriate in the future,

12

in this case or others like it, where the defendant shows unreasonable delay amounts to "flagrant misconduct" warranting dismissal. *Id.*

Here, the delay was longer than in *Donnelly*, but Johnson also waited longer to raise his concerns than the defendant in *Donnelly*. The Court did not find the conduct here rose to the bad faith, and similarly, does not find the conduct rises to "flagrant misconduct" under the due process analysis. The Court has received the Sealed Corrected Forensic Evaluation Report and accepted it, Johnson is back in this jurisdiction, and the case may proceed without further delay. The Court finds that weighing the four due process factors demonstrates Johnson's rights were not violated by the Attorney General's statutory violation.[5]

### III. CONCLUSION

The Court is troubled by what Johnson endured in this case. Even the Government admits that "this is an unacceptable amount of time for a defendant to be placed in custody awaiting evaluation." (Doc. 28 at PageID 139.) Although the Court **DENIES** Johnson's Motion to Dismiss (Doc. 24), it does not do so lightly. The delay Johnson experienced was "unacceptable."

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

---

[5] Were Johnson to have sooner filed a motion complaining of the delay, a finding of "flagrant misconduct" may have been warranted. For instance, had Johnson asserted his right sooner, the Court could have ordered the Attorney General to file its psychological examination report within a prescribed time period and given notice that failure to comply may warrant a finding of "flagrant misconduct" and/or dismissal of the case.